UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| SATISH SHAH, THE SATISH SHAH REVOCABLE TRUST, AMISH SHAH, DEBRA ANN SHAH, ROBERT E. THEROUX, DANIEL L. WILLIAMS and FREDERICK H. BACHMAN, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| | ) | Case No. 3:06-CV-0712-RM |
| KIK INTERNATIONAL LLC, | ) ) ) | |
| Defendant. | ) | |

**BRIEF IN SUPPORT OF COUNTER-DEFENDANTS' MOTION TO DISMISS**

Respectfully Submitted,

BARNES & THORNBURG  LLP
Timothy J. Abeska (3998-71)
tim.abeska@btlaw.com
Robert G. Devetski (13957-71)
*robert.devetski@btlaw.com*
Brian E. Casey (23263-71)
*brian.casey@btlaw.com*
Kelly J. Hartzler (24929-20)
*kelly.hartzler@btlaw.com*
600 1st Source Bank Center
100 N. Michigan Street
South Bend, Indiana  46601
(574) 233-1171 (telephone)
(574) 237-1125 (facsimile)

Counsel for Plaintiffs/Counter-defendants

## TABLE OF CONTENTS

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF INDIANA SOUTH BEND DIVISION ............................................................................................................... 1

BRIEF IN SUPPORT OF COUNTER-DEFENDANTS' MOTION TO DISMISS ..................... 1

TABLE OF CONTENTS ............................................................................................................ i

Table of authorities ................................................................................................................... i

Statement of the issues ........................................................................................................... vi

I.    Introduction ..................................................................................................................... 1

II.   Factual Background ......................................................................................................... 1

A.   History of Transaction ................................................................................................ 1
B.   History of Litigation ................................................................................................... 3
C.   Declaratory Judgment Counterclaims ........................................................................ 7
III.  Law ................................................................................................................................. 7

A.   KIK's Common Law Fraud Claim Should Be Dismissed ........................................... 8
   1.   Common Law Fraud Must Be Pleaded With Particularity Under Rule 9(b). ............... 8
   2.   The Sellers Can Submit The Attached Exhibits Without Converting a Rule 12(b)(6) Motion to Dismiss Into a Motion for Summary Judgment. ................................................ 11
   3.   KIK Fails to State a Claim for Common Law Fraud Under Rule 12(b)(6). ................. 13
B.   KIK's Criminal Mischief and Deception Counterclaims Fail. ..................................... 20
C.   KIK's Securities Fraud Claim Fails As a Matter of Law ............................................. 20
   1.   Group Pleading Is Impermissible Either for Pleading Scienter or Material Misrepresentations Or Omissions. ..................................................................................... 21
   2.   KIK Has Not Adequately Pleaded Scienter With Respect To Each Defendant. .......... 23
   3.   KIK Has Failed to Properly Plead That Each Counter-defendant     Made Misrepresentations or Omissions of Material Fact. ................................................... 28
   4.   KIK Has Failed to Plead Loss Causation Properly. ...................................................... 30
D.   The Declaratory Judgment Counterclaims Fail as a Matter of Law ............................ 32
IV.   Conclusion ..................................................................................................................... 34

CERTIFICATE OF SERVICE .................................................................................................. 35

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*ABN AMRO Mortgage Group, Inc. v. Maximum Mortgage, Inc.*, 429 F. Supp. 2d 1031 (N.D. Ind. 2006)............................................................................................9, 14

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) ...............................................26

*Ackerman v. Nw. Mutual Life Insurance Co.*, 172 F.3d 467 (7th Cir. 1999)................. 8-9

*Banco del Atlantico, S.A. v. Stauder*, No. 1:03-CV-1342-LJM-VSS, 2005 WL 1925830 (S.D. Ind. Aug. 11, 2005)...............................................................................9

*Bankers Trust Co. v. Old Republic Insurance Co.*, 959 F.2d 677 (7th Cir. 1992)........... 8-9

*Banking & Sav., F.A. v. Arthur Young & Co.*, 706 F. Supp. 1408 (D. Minn. 1988) .........29

*In re Bridgestone/Firestone, Inc., No. IP 01-5252-C-B/S*, 2002 WL. 31689264 (S.D. Ind. 2002) ...................................................................................................8

*In re Brightpoint Sec. Litigation*, 2001 WL. 395752 (S.D. Ind. March 29, 2001) ....................................................................... 21, 24, 26-28

*Chill v. General Electric Corp.*, 101 F.3d 263 (2d Cir. 1996)..........................................27

*In re Comshare Inc. Sec. Litigation*, 183 F.3d 542 (6th Cir. 1999)..................................27

*Concordia Theological Seminary v. Hendry*, No. 1:05CV285-TS, 2005 WL. 3005482 (N.D. Ind. Nov. 9, 2005) .............................................................................13

*DeGroff v. Commissioner of IRS*, 54 T.C. 59 (U.S. Tax Ct., 1970)............................32, 33

*Design Time, Inc. v. Synthetic Diamond Tech, Inc.*, 674 F. Supp. 1564 (N.D. Ind. 1987) ...........................................................................................................9, 11

*DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir. 1990)...................................8, 11, 26, 29

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) .....................................30, 31

*Fidelity National Title Insurance Co. of N.Y. v. Intercounty National Title Insurance Co.*, 412 F.3d 745 (7th Cir. 2005)...............................................................8

*In re First Union Corp. Sec. Litigation*, 128 F. Supp. 2d 871 (W.D.N.C. 2001) .............26

i

*Friedman v. Rayovac Corp.*, 295 F. Supp. 2d 957 (W.D. Wis. 2003)...............................22

*GSC Partners CDO Fund v. Washington*, 368 F.3d 228 (3d Cir. 2004) ..........................29

*Gallagher v. Abbot Laboratoriess*, 269 F.3d 806 (7th Cir. 2001) ....................................14

*Goren v. New Vision International, Inc.*, 156 F.3d 721 (7th Cir. 1998)..........................22

*Grassi v. Information Resources, Inc.*, 63 F.3d 596 (7th Cir. 1995) ................................29

*Graue Mill Development Corp. v. Colonial Bank & Trust*, 927 F.2d 988 (7th Cir. 1991) ...................................................................................................................10, 11

*Hefferman v. Bass*, 467 F.3d 596 (7th Cir. 2006) ...........................................................8, 9

*Hudson v. Ace Cash Express, Inc., No. IP -1-1336-C H/S*, 2002 WL 1205060 (S.D. Ind. May 30, 2002) ..................................................................................12

*Interlease Aviation Investors II (Aloha) LLC v. Vanguard Airlines, Inc.*, 254 F. Supp. 2d 1028 (N.D. Ill. 2003) ...................................................................................9

*Johnson v. Tellabs, Inc.*, 303 F. Supp. 2d 941 (N.D. Ill. 2004) ........................................25

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) ...............................................................25

*In re Keyspan Corp. Sec. Litigation*, 383 F. Supp. 2d 358 (E.D.N.Y. 2003) ....................29

*Kriendler v. Chemical Waste Management*, 877 F. Supp. 1140 (N.D. Ill. 1995)..............26

*Last Atlantis Capital LLC v. Chicago Board Options Exch., Inc.*, 2006 U.S. Dist. LEXIS 74038 (N.D. Ill. Sept. 13, 2006) ......................................................24

*Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015 (5th Cir. 1996)................................27

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588 (7th Cir. 2006)................ 20-25

*Massey  v. Merrill Lynch & Co., Inc.*, 464 F.3d 642 (7th Cir. 2006) ................... 11-12, 32

*McConnell & Sons, Inc. v. Target Data Sys.*, 84 F. Supp. 2d 980 (N.D. Ind. 2000).........20

*McCready v. Ebay*, 453 F.3d 882 (7th Cir. 2006)............................................................12

*Menominee Indian Tribe of Wisc. v. Thompson*, 161 F.3d 449 (7th Cir. 1998) ...............12

*Midwest Commerce Banking v. Elkhart City Centre*, 4 F.3d 521 (7th Cir. 1993)............15

*Perry v. Eastman Kodak Co.*, 1991 U.S. Dist. LEXIS 20914 (S.D. Ind. April 22, 1991) ...................................................................................................................14

*Premier Capital Management, L.L.C. v. Cohen*, 2003 WL 21960357 (N.D. Ill. 2003) ......................................................................................................................25

*Santa Fe Industrial, Inc. v. Green*, 430 U.S. 462 (1977)....................................30

*Sears v. Likens*, 912 F.2d 889 (7th Cir. 1990) ....................................................22

*Southland Sec. Corp. v. Inspire Insurance Solutions, Inc.*, 365 F.3d 353 (5th Cir. 2004) .......................................................................................................................22

*SMC Corp. v. Peoplesoft USA, Inc. (SMC I)*, No. 1:00CV1095-LJM-VSS, 2004 WL 828226 (S.D. Ind. March 15, 2004).................................................................14

*SMC Corp. v. Peoplesoft USA, Inc. (SMC II)*, No. 1:00CV1095-LJM-VSS, 2004 WL 2538641 (S.D. Ind. Oct. 12, 2004) ...............................................................20

*Stavros v. Exelon Corp.*, 266 F. Supp. 2d 833 (N.D. Ill. 2003) ..........................24

*Thor Power Tool Co. v. Commissioner Int. Rev.*, 439 U.S. 522 (1979) ..............27

*Tierney v. Vahle*, 304 F.3d 734 (7th Cir. 2002) ..................................................12

*UniQuality, Inc. v. Infotronx, Inc.*, 974 F.2d 918 (7th Cir. 1992)........................9

*United States v. Olis*, 429 F.3d 540 (5th Cir. 2005)...........................................31

*Vaughn v. General Foods Corp.*, 797 F.2d 1403 (7th Cir. 1986)................14, 28

*Veal v. First America Sav. Bank*, 914 F.2d 909 (7th Cir. 1990) ..........................9

*Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771 (7th Cir. 1994) ...............8

*In re Westinghouse Sec. Litigation*, 832 F. Supp. 948 (W.D. Pa. 1993), *aff'd in part, rev'd in part on other grounds*.........................................................................26

*Wright v. Associated Insurance Co's, Inc.*, 29 F.3d 1244 (7th Cir. 1994) ........12

## STATE CASES

*Am's. Directories v. Stellhorn One Hour*, 833 N.E.2d 1059 (Ind. Ct. App. 2005)............18

*Anderson* v. Indianapolis, Ind. AAMCO Dealers Adver. Pool, 678 N.E.2d 832, 837 (Ind. Ct. App. 1997)..................................................................14

*Andrew Johnson Bank v. Crumley*, 699 S.W.2d 164 (Tenn. Ct. App. 1985) ..................32

*Autoexchange.com, Inc. v. Dreyer & Reinbold, Inc.*, 816 N.E.2d 40 (Ind. Ct. App. 2004) ........................................................................................................................13

*C&J Builders & Remodelers, LLC v. Geisenheimer*, 733 A.2d 193 (Conn. 1999) ..........32

*Circle Center Co. v. Y/G Ind.*, 762 N.E.2d 176 (Ind. Ct. App. 2002)...............................15

*Comfax Corp. v. N. America Van Lines, Inc.*, 587 N.E.2d 118 (Ind. Ct. App. 1992) ........................................................................................................................13, 15

*Dunn v. Meridian Mutual Insurance Co.*, 836 N.E.2d 249 (Ind. 2005) ...........................32

*Jarvis Drilling, Inc. v. Midwest Oil Producing Co.*, 626 N.E.2d 821 (Ind. Ct. App. 1993) ...................................................................................................... 16-17

*McKinney v. State*, 693 N.E.2d 65 (Ind. 1998) .................................................................13

*Murphy v. Mellon Accountants P.C.*, 538 N.E.2d 968 (Ind. Ct. App. 1989)....................15

*Neff v. Ind. State University Board of Trustees*, 538 N.E.2d 255 (Ind. Ct. App. 1989) ........................................................................................................................15

*Paulson v. Centier Bank*, 704 N.E.2d 482 (Ind. Ct. App. 1998) ......................................14

*Plymale v. Upright*, 419 N.E.2d 756 (Ind. Ct. App. 1981).........................................13, 15

*Prall v. Ind. National Bank*, 627 N.E.2d 1374 (Ind. Ct. App. 1994)................................15

*Pugh's IGA v. Super Food Services, Inc.*, 531 N.E.2d 1194 (Ind. Ct. App. 1988)............15

*Roberts v. Agricredit Acceptance Corp.*, 764 N.E.2d 776 (Ind. Ct. App. 2002) ..............15

*Serv. Lumber Co. v. Sumpter Valley Ry Co.*, 158 P. 175 ( Or. 1916) ...............................33

*South Bend v. Blue Lines*, *Inc.,* 38 N.E.2d 575 (Ind. 1942).......................................32-33

*Tobin v. Ruman*, 819 N.E.2d 78 (Ind. Ct. App. 2005) .......................................... 13, 19-20

*Wheatcraft v. Wheatcraft*, 825 N.E.2d 23 (Ind. Ct. App. 2005) ................................. 13-14

*Wisconics Engineering, Inc. v. Fisher*, 466 N.E.2d 745 (Ind. Ct. App. 1984) ...... 15-16, 19

## FEDERAL STATUTES

Private Securities Litigation Reform Act, 15 U.S.C. §78u-4(b) ...............21, 22, 23, 28, 30

15 U.S.C. §78(j) ...........................................................................................................20

SEC  Rule 10b-5, 17 C.F.R. 240.10b-5(b) ................................................................. 20-21

## <u>STATEMENT OF THE ISSUES</u>

I.  Whether KIK common law fraud claims must fail for failure to plead with particularity as required by FED. R. CIV. P. 9(b).

II.  Whether KIK securities fraud claims must fail because they are not adequately pleaded under the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 ("PSLRA").

III.  Whether KIK's common law and securities fraud allegations must be dismissed for failure to state a claim for relief under FED. R. CIV. P. 12(b)(6).

IV. Whether KIK's statutory "criminal mischief and deception" claim should be dismissed under FED. R. CIV. P. 12(b)(6) when KIK's common law fraud claims fail.

V.  Whether KIK's declaratory judgment claims fail because KIK is not a "successor in interest" under the terms of the Bachman and Theroux employment contracts with APG, such that APG cannot assign the contracts to KIK.

## I.  INTRODUCTION

This court should dismiss in their entirety each of the counterclaims filed by KIK International LLC ("KIK") on November 9, 2006 (Doc. # 14) for failure to plead fraud with the requisite specificity under FED. R. CIV. P. 9(b) and the Private Securities Litigation Reform Act, 15 U.S.C. §78u-4 ("PSLRA") and failure to state a claim under FED. R. CIV. P. 12(b)(6).

## II.  FACTUAL BACKGROUND

The counterclaims asserted by KIK all arise from a stock purchase transaction which closed on October 21, 2005. *Complaint* ¶ 2. Under the terms of a Stock Purchase Agreement ("SPA") dated September 19, 2005, KIK agreed to purchase all of the stock in APG, Inc., a non-public corporation owned by the counter-defendants, (the "Sellers"). *See id.* Exh. 1.  As part of the transaction, counter-defendants Robert Theroux and Frederick Bachman became employees of APG.  *See*  Exh. 9-10.  KIK now seems to have decided that it should have negotiated a different deal for APG.   Assuming for purposes of this Motion that KIK's allegations are true, its counterclaims fail.

### A.  History of Transaction

On August 26, 2005, KIK and majority shareholder Satish Shah, on behalf of APG and its shareholders, "entered into a letter agreement . . . pursuant to which KIK was granted the option to make a definitive offer to acquire the APG Shares from Sellers for the cash price of $78 million." *Counterclaim* ("CC") ¶ 24.  In the letter, KIK agreed to "undertake intensive due diligence" "[f]rom the date of [APG's] acceptance of this letter until the close of business on September 11, 2005." *See*  Exh. 1.  In turn, Shah agreed to "be bound" to sell APG to KIK if, "at or prior to the end" of KIK's due diligence, KIK delivered "a binding all cash offer" to purchase APG at the sale price.  *Id.*  According to KIK, "KIK and its consultants commenced intensive and accelerated due diligence" on August 29, 2005.  *Id.* ¶45.

The $78 million sale price allegedly was based on actual financial statements for October through July 2005, as well as projected financials for August and September 2005 (the rest of the fiscal year). *CC* ¶¶ 27, 29. These documents projected that APG would generate approximately $12 million in earnings before interest, taxes, depreciation, and amortization ("EBITDA") in the fiscal year ending September 30, 2005. *CC* ¶¶ 2, 25-27. The Sellers provided these financials to KIK on August 25, 2005, the day before the parties entered into the option agreement. *Id.* ¶ 28; Exh. 2. KIK acquired the option despite Sellers' statement that APG's August 2005 "financial results" were not available. *CC* ¶ 30.

According to KIK, this representation regarding August 2005 "financial results" was false because on August 25, 2005, Bachman emailed "financial statements for the first three weeks of August 2005" (August pro formas) to Theroux and Shah. *Id.* ¶ 32. Therefore, so-called "actual results" for these weeks were available before KIK made its August 26, 2005 offer. *Id.* ¶ 33. Moreover, KIK alleges the undisclosed pro formas projected that August results "likely would be substantially below the projected $821,000 that APG represented to KIK was the best projection for August 2005 then available to Sellers and APG." *Id.* ¶ 33.

On September 13, 2005, six days before KIK signed "a binding agreement respecting KIK's purchase of the APG Shares from the Sellers" (the SPA) and over five weeks before the stock purchase transaction closed on October 21st, Bachman gave KIK the actual August 2005 financial results. *Id.* ¶ 47. These results showed that APG generated $789,000 of EBITDA in August 2005 (less than a 4% decrease from the prior August projections). *Id.* ¶ 48. After being told by Bachman that "Sellers were continuing to expect and project EBITDA for FY2005 in excess of $12 million," KIK signed the SPA on September 19, 2005 for a purchase price of $73 million, subject to various post-closing adjustments. *Id.* ¶¶ 2, 50, 55.

On September 14 and 20, 2005, Bachman emailed pro formas for the first two and three weeks of September to the other Sellers. *CC* ¶¶ 52, 56. According to KIK, these partial statements projected September earnings to be less than the projections provided to KIK on August 25th. *Id.* ¶¶ 27, 29, 53, 57. However, by month-end, the actual September financial results were within the range predicted by the Sellers. *Id.*¶ 63. In addition, the September financials showed that APG had generated FY2005 EBITDA of $12,201,000 rather than the $12,194,000 predicted in August 2005 – and above the approximately $12 million projection upon which the original option agreement was based. *Id.* The Sellers gave this information to KIK three days before the stock purchase transaction closed on October 21, 2005. *Id.* ¶¶ 63, 64.

## B. History of Litigation

At some point after executing the SPA, KIK discovered that it had paid nearly $20 million more than a previous potential buyer had valued APG. *Id.* ¶43. Consequently, KIK filed an arbitration demand with the American Arbitration Association ("AAA") asserting Indemnification Claims on September 20, 2006. *See Complaint*, Exh. 3. This demand included unarbitrable fraud and Article 7 claims. *Id*. In addition, KIK terminated the employment of Bachman and Theroux and filed separate declaratory judgment actions in federal court seeking affirmation that the terminations were just. *See* Exh. 17-18.

On October 19, 2006, Sellers filed this lawsuit to stay the AAA arbitration and compel arbitration in the correct forum.[1] On October 23, 2006, Bachman and Theroux moved to dismiss the declaratory judgment actions because, in part, KIK had manufactured subject matter jurisdiction. *See* Exh. 19-20. Rather than respond to these motions on the merits, KIK voluntarily

---

[1] The Complaint is the subject of KIK's November 9, 2006 Motion to Dismiss, as well as the Sellers' November 27, 2006 Motion to Stay, Motion to Compel, and Motion for a Hearing, all currently pending before the Court.

dismissed the declaratory judgment actions and refiled them as counterclaims here. *See* Exh. 21-22; *CC* ¶¶ 138-50. KIK also withdrew its fraud claim from the AAA demand and refiled it as a counterclaim, tacking on a securities fraud and criminal mischief/deception claims based on the same alleged facts. *See CC* ¶¶ 24-137. KIK brings these later three counterclaims against the "Sellers," who KIK defines as Shah, Bachman, Theroux, and the Satish Shah Revocable Trust. *See CC* ¶ 12.[2] As best as Sellers can discern, these claims rest on the following 14 allegedly fraudulent "misrepresentations" or "omissions:"[3]

1.    Prior to the close of FY2005, at least Bachman represented that the projected EBITDA for FY2005 would be approximately $12 million. *Id.* at ¶¶ 25, 27, 50.

2.    At some point prior to August 26, 2005, unidentified Sellers represented that "financial results" for September and the first three weeks of August 2005 were not available and that the projections provided were the best and most accurate projections available. *Id.* ¶ 30.

3.    "On information and belief, Sellers withheld and fraudulently concealed the existence of Partial August Financials from KIK" until Sellers provided the actual August financial statements on September 13, 2005. *Id.* ¶¶ 37, 47.

4.    "On information and belief," unidentified Sellers unsuccessfully pressured KIK to accelerate due diligence in order to reduce the likelihood that KIK would discover Sellers' misrepresentations regarding the financial condition of APG (even though the SPA was not

---

[2] It is impossible to determine precisely against whom KIK has asserted claims. Before the AAA, KIK alleged fraud by only the "Key Sellers" Bachman, Theroux, and Satish Shah. In the counterclaims, KIK alleges fraud by "inter alia" the "Sellers" Shah, the Satish Shah Revocable Trust, Theroux, and Bachman. *CC* ¶12. It is unclear whether "Sellers" also means Plaintiffs Amish Shah, Debra Ann Shah, and Daniel L. Williams. They are Plaintiffs in this case and former APG shareholders, but KIK has not identified them as counter-defendants, made allegations against them specifically, or even mentioned them in its counterclaims. As will be discussed below, in the event KIK is asserting claims against these Plaintiffs, these claims should be dismissed because such claims would represent the worst kind of impermissible "group pleading."

[3] Hereinafter, Sellers will refer to KIK's allegations by number (*i.e.*, Allegation 1).

signed until later than specified in the August letter agreement). *Id.* ¶¶ 40-41, 44.

5.      Unidentified Sellers "concealed from and failed and refused to disclose" the partial September financials from KIK until Sellers provided KIK the actual September financials on October 18, 2005. *Id.* ¶¶ 58, 62.

6.      Bachman concealed his September 22, 2005 estimate that "inventory issues beyond reserves, best guess is $500,000" could be one of four factors reducing escrow funds and that he was "nervous about the working capital and related bank loan assumptions." *Id.* ¶¶ 59-60; *see* Exh. 7.

7.      The unaudited financial statements for the first 10 months of FY2005 "did not fairly represent the financial condition . . . or results of operations at APG, . . . had not been prepared in accordance with GAAP as consistently applied, and . . . were in fact materially misstated in several particulars." *CC* ¶¶ 28, 69-74; Exh. 23. These alleged GAAP violations dealt with the calculation of various reserves for inventory (¶70), unidentified "self-insured costs" which were not properly accrued (¶71), and a number of other generic projected expenses and accounts receivable (¶72).

8.      Bachman and Theroux "repeatedly and falsely represented to KIK that the forecast sales for August 2005 that did not ship in August 2005 had in fact shipped and would be shipped in September 2005." *Id.* ¶ 50.

9.      "On information and belief," Shah failed to disclose that he "reached an agreement with Connetics that Connetics would take delivery of substantially all of its orders for products needed in calendar year ('CY') 2005 in the second and third quarters of CY2005, and it would purchase and take delivery of few or no products from APG in the fourth quarter of CY2005 (the first quarter that KIK owned APG)." *Id.* ¶ 76.

10.     In August 2005, Shah learned, but did not disclose to KIK, that Connetics was terminating its newly-appointed distributor, which would decrease the amount of future purchases by Connetics. *Id.* ¶ 77.

11.     "On information and belief," the Sellers became aware, after the SPA was signed but before closing, that "APG substantially altered the scope of" the palletizing system at APG's new distribution center (which KIK representatives toured while it was under construction), but did not disclose this information to KIK. *Id.*  ¶¶ 86, 92-93.

12.     "On information and belief," Sellers were aware of "some or all" unidentified cost overruns, "or the likelihood of such cost overruns" (which allegedly occurred at some unidentified time) associated with finishing construction of the new distribution center, but did not disclose them to KIK. *Id.* ¶ 94.

13.     Sellers failed "to purchase and/or budget for the cost of installing" a software inventory management and control system" in the distribution center. *Id.*  ¶ 95.

14.     Sellers "failed to account for a change-of-control provision" in certain software license which would be triggered after KIK acquired the APG shares or to budget for "problems with the software that was chosen and installed." *Id.*  ¶ 95.

In its Counterclaims, KIK admits that **(1)** the FY2005 EBITDA was over $12 million, *Id.* ¶63; **(2)** it was KIK that proposed that due diligence end on September 11, 2005, *see* Exh. 1; **(3)** the Sellers provided 10 months of actual financials to KIK *before* KIK made the August 26, 2005 offer *or* began due diligence, *CC* ¶ 28; **(4)** the Sellers provided *actual* August 2005 financials to KIK *before* KIK signed a binding agreement, *See Id.* ¶ 47; **(5)** the Sellers provided *actual* September 2005 financials to KIK *before* KIK closed on the sale, *Id.* ¶ 62; and **(6)** after one year of control over APG's financial records, KIK still has no basis for asserting that the August and

6

September 2005 financials are incorrect. *Id.* ¶¶ 48, 63 (noting that the financial results are "under investigation").

### C.  Declaratory Judgment Counterclaims

As part of the stock purchase transaction, minority shareholders Bachman and Theroux entered into Employment Agreements with APG, under which APG agreed to employ Bachman as its Director of Finance and Theroux as its Regional General Manager for four years beginning October 21, 2005.  *See* Exh 9-10.  Under the Employment Agreements, APG had the exclusive power to terminate Bachman and Theroux for cause.  *Id.*  The Employment Agreements also contained an assignment clause providing:

> This Agreement may be assigned by the Company to a successor in interest, including but not limited to a wholly owned subsidiary or parent of the Company, or in connection with the sale to any person, partnership, corporation or other entity of the assets of the Company.  The rights of Employee hereunder are personal and non-assignable.

*Id.* at § 17.

On September 20, 2006, KIK notified Bachman and Theroux that APG had assigned its "rights, obligations, and interest" in the Employment Agreements to KIK and also that KIK had grounds to terminate them for cause. *See MTD* 11-12. These notices gave Bachman and Theroux only one week to respond to the allegations against them. *Id.*  By letters dated September 25 and 26, 2006, Bachman and Theroux responded to KIK by denying any allegations of wrongdoing and asking that KIK not breach the Employment Agreement by terminating their employment. *See Counterclaim* ¶¶ 132, 145;  Exh. 13-14.  However, KIK terminated Bachman and Theroux on Friday, September 29, 2006. *Id.* ¶¶ 134, 147;  Exh. 15-16.

### III.  LAW

KIK has asserted five counterclaims: (1) common law fraud; (2) securities fraud; (3) criminal mischief and deception under the Indiana Crime Victims Act; and (4) two declaratory

judgment claims seeking ratification of KIK's termination of Bachman and Theroux. None of KIK's claims, however, meet the pleading requirements these claims must satisfy. In particular, all of KIK's counterclaims fail under Rules 9(b) and 12(b)(6). In addition, KIK's securities fraud claim does not satisfy the even more rigorous pleading standards imposed by the PSLRA. As a result, this Court should dismiss each of KIK's counterclaims in their entirety.

### A. KIK's Common Law Fraud Claim Should Be Dismissed.

"[F]raud is frequently charged irresponsibly by people who have suffered a loss and want to find someone to blame for it." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) (Posner, J.). KIK's allegations of common law fraud are unsupported, insufficiently pleaded, and substantively without merit. Accordingly, they should be dismissed with prejudice.

### 1. Common Law Fraud Must Be Pleaded With Particularity Under Rule 9(b).

FED. R. CIV. P. 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." To satisfy Rule 9(b), KIK must allege in detail "'the identity of the person making the representation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to [KIK.]'" *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)). These requirements apply to both fraudulent misrepresentations and omissions. *See In re Bridgestone/Firestone, Inc.*, No. IP 01-5252-C-B/S, 2002 WL 31689264, at *8 (S.D. Ind. 2002) (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). The purpose of Rule 9(b) is threefold: "(1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party." *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994); *see also Fid. Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 748 (7th Cir. 2005) ("The purpose

8

[of Rule 9(b)] is to minimize the extortionate impact that a baseless claim of fraud can have on an firm or an individual."). Rule 9(b) applies "to all cases filed in federal court, no matter what the basis of subject matter jurisdiction." *Hefferman*, 467 F.3d at 599.

Group pleading, or "lumping together" defendants, does not satisfy Rule 9(b). *See ABN AMRO Mortgage Group, Inc. v. Maximum Mortgage, Inc.,* 429 F. Supp. 2d 1031, 1037 (N.D. Ind. 2006) (rejecting group pleading of common law fraud); *Banco del Atlantico, S.A. v. Stauder*, No. 1:03-CV-1342-LJM-VSS, 2005 WL 1925830, at *13 (S.D. Ind. Aug. 11, 2005) (dismissal of "those defendants who made no direct misrepresentation to plaintiffs" is appropriate despite a "'complex scheme to defraud.'"); *Interlease Aviation Investors II (Aloha) LLC v. Vanguard Airlines, Inc.*, 254 F. Supp.2d 1028, 1038 (N.D. Ill. 2003) ("In cases involving multiple defendants, the complaint should notify each defendant of the nature of his alleged participation in the fraud."). Rather, the plaintiff is "required to specify which defendants said what to whom and when" in counterclaims with multiple defendants. *Ackerman,* 172 F.3d at 471.

Similarly, "allegations made upon information and belief are insufficient, even if the facts are inaccessible to the plaintiff," unless the allegations include the facts upon which the belief is based. *Uni*Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 924 (7th Cir. 1992); *See also Bankers Trust*, 959 F.2d at 683; *Design Time, Inc. v. Synthetic Diamond Tech, Inc.*, 674 F. Supp. 1564, 1566-71 (N.D. Ind. 1987) (Miller, J.). In other words, even when some information is within the exclusive knowledge of the defendant, the plaintiff may not justify a bald allegation of fraud solely on the basis that Rule 9(b)'s requirements are relaxed. *See Bankers Trust*, 959 F. 2d at 683; *Veal v. First Am. Sav. Bank*, 914 F.2d 909, 913 (7th Cir. 1990) ("Conclusory allegations do not satisfy the requirements of Rule 9(b) and subject the pleader to dismissal."). The "duty of reasonable precomplaint inquiry [is] not satisfied by rumor or hunch." *Bankers Trust*, 959 F. 2d

at 683; *Graue Mill Dev. Corp. v. Colonial Bank & Trust*, 927 F.2d 988, 992-93 (7th Cir. 1991).

Setting aside KIK's other pleading deficiencies, most of KIK's allegations suffer from one or the other of these flaws, and often both.  These deficiencies are all the more improper because: (1) this transaction was one involving just a few people, at least on behalf of "Sellers," making it all the more improbable that KIK cannot identify with specificity who made the various misrepresentations or omissions it alleges; and (2) KIK has had unfettered access to APG's books and records for over a year now, making the generality and imprecision of its fraud allegations and its claim of "continuing investigation" all the more dubious.

As an initial matter, KIK's fraud allegations are almost always directed collectively at "Sellers" rather than any particular person.  *See, e.g.*, CC ¶¶ 30, 37, 40-41, 44, 47, 58, 62 (Allegations 2-5, 7, and 11-14).  Doing so constitutes impermissible group pleading.  This method of pleading is particularly improper with respect to Plaintiffs Amish Shah, Debra Ann Shah, and Daniel L. Williams.  These Plaintiffs are in fact "Sellers," but there are no substantive allegations against them anywhere in KIK's counterclaim.  Indeed, unless they are encompassed by the "inter alia," in paragraph 12, they are not mentioned at all.

Moreover, most of KIK's fraud allegations are improperly pleaded based on "information and belief" with no supporting facts for many of the alleged omissions. *See* Allegations 3, 4, 9, 10, 11, 12.  KIK provides no basis for its claim that Shah had an agreement with APG customer Connetics respecting the timing of orders (Allegation 9).  KIK alleges that unknown Sellers concealed information regarding the distribution center KIK representatives physically inspected, but provides no factual support other than that, at some unknown time, cost overruns occurred

10

(Allegations 11 and 12). KIK claims that APG[4] "altered the scope" of the distribution center project without explanation, that the Sellers knew of "some or all" unidentified cost overruns "or the likelihood" of those overruns, and that the Sellers fraudulently failed to budget for "problems." (*See* Allegations 11, 12, and 14). KIK's other allegations (like Allegations 13 and 14) are equally vague and non-specific. *Compare Design Time*, 674 F. Supp. at 1571.

Most of KIK's allegations also fail to plead the "who, what, when, where, and how" of the Sellers' alleged fraudulent representations and omissions. *See DiLeo*, 901 F.2d at 627. In addition to the previous examples, KIK fails to identify who, how, and when with respect to Allegations 2 and 4 and does not name the "newly-appointed distributor" that Connetics allegedly terminated (Allegation 10). Likewise, KIK states that Bachman and Theroux "repeatedly" made shipping misrepresentations (Allegation 8), but does not specify when, how, and to whom at KIK.

In short, KIK's common law fraud counterclaim is nothing more than a series of unsupported, vague, and cryptic statements that the Seventh Circuit has held do not satisfy the requirements of Rule 9(b). *See Graue Mill,* 927 F.2d at 992-93. Accordingly, this Court should dismiss the common law fraud counterclaim for failure to plead with particularity under Rule 9(b). Alternatively, the Court should dismiss the counterclaim under Rule 12(b)(6).

**2. The Sellers Can Submit The Attached Exhibits Without Converting a Rule 12(b)(6) Motion to Dismiss Into a Motion for Summary Judgment.**

A counterclaim fails under Rule 12(b)(6) if it does not "state a claim upon which relief can be granted." In general, the Court must take "all the facts pled as true, and construe[] all inferences in favor of the plaintiffs" when ruling on a Rule 12(b)(6) motion to dismiss. *Massey*

---

[4] Throughout the counterclaim, KIK alternatively assigns fault to APG and the Sellers, while also pleading that APG is both distinct from the Sellers and a nonparty to this action. *See, e.g. CC* ¶¶ 8, 12, 31, 33, 72, 93, 95.

*v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 645 (7th Cir. 2006). However, "[a] plaintiff cannot evade dismissal . . . simply by failing to attach to his complaint a document that proved his claim had no merit." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). In addition, when "an exhibit conflicts with the allegations of the complaint, the exhibit typically controls." *Massey*, 464 F.3d at 645. Therefore, a party may "plead itself out of court" by basing its claims on documents which, on their face, show that the party is not entitled to judgment. *Id; Tierney*, 304 F.3d at 738; *Hudson v. Ace Cash Express, Inc*., No. IP -1-1336-C H/S, 2002 WL 1205060, at *1-2 (S.D. Ind. May 30, 2002).

Documents referenced in a pleading and central to it are considered part of the pleading, no matter which party provides the documents to the court. *See McCready v. Ebay*, 453 F.3d 882, 891 (7th Cir. 2006); *Tierney*, 304 F.3d at 738; *Wright v. Associated Ins. Co's, Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). The Court also may take judicial notice of "documents contained in the public record . . . without converting a motion to dismiss into a motion for summary judgment." *Menominee Indian Tribe of Wisc. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998).

Despite nearly replicating its AAA arbitration demand, KIK has omitted *all* supporting exhibits it filed with the AAA from its counterclaims.[5] This court is "not bound to accept [KIK's] allegations as to the effect of [these documents], but can independently examine the document[s] and form its own conclusions as to the proper construction and meaning to be given

---

[5] Specifically, KIK omits the August 26, 2005 letter and a September 22, 2005 email from Bachman on which KIK's fraud and criminal mischief/deception counterclaims rely. *See CC* ¶¶ 25, 59; Exh. 1,7. KIK also omits the 10 months of actual financials the Sellers provided to KIK before it offered to purchase APG (only a summary of which is attached to the AAA demand), the projected and actual financials for August and September 2005, and a September 15, 2005 email from Bachman, which form the basis for KIK's claim that the Sellers misrepresented the EBITDA of APG for FY2005. *CC* ¶¶ 28-38, 47-63, 67-73; Exh. 2-6, 8, 23. Likewise, KIK has had two opportunities to place the Bachman and Theroux employment agreements, response letters, and termination notices before the Court, all of which KIK substantially references in its two declaratory judgment counterclaims. *Id.* ¶¶ 127-34, 140-47; Exh. 9-16. However, KIK omitted these documents both from its original declaratory judgment complaints and also from the counterclaims in this case.

to the material." 5A Wright & Miller, *Fed. Practice & Procedure* § 1327, at 450 (3rd ed. 2004). Therefore, the Sellers have attached these documents to this Brief.

### 3.    KIK Fails to State a Claim for Common Law Fraud Under Rule 12(b)(6).

KIK does not state whether it is proceeding under a theory of actual or constructive fraud for its common law fraud counterclaim. Accordingly, the Sellers address KIK's allegations under both theories.  It is undisputed that Indiana law controls.  *See* SPA § 11.6, p. 50.

Actual fraud requires "(1) a material misrepresentation of past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity," (4) and with intent to deceive, (5) rightful reliance by KIK, and (6) that the misrepresentation proximately caused KIK's injury. *Wheatcraft v. Wheatcraft*, 825 N.E.2d 23, 30 (Ind. Ct. App. 2005); *See also Autoexchange.com, Inc. v. Dreyer & Reinbold, Inc.*, 816 N.E.2d 40, 51 (Ind. Ct. App. 2004). Similarly, constructive fraud requires (1) that the Sellers had a duty to KIK by virtue of their relationship, (2) the Sellers violated "that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists," (3) KIK's reliance (4) proximate cause, and (5) that the Sellers gained an advantage at the expense of KIK.  *Wheatcraft*, 825 N.E.2d at 30.  These theories share two commonalities relevant here: the requirement of a past or existing fact, and the need to establish the right of reliance. *See id.*; *Concordia Theological Seminary v. Hendry*, No. 1:05CV285-TS, 2005 WL 3005482, at *3 (N.D. Ind. Nov. 9, 2005); *Autoexchange.com*, 816 N.E.2d at 51; *Comfax Corp. v. N. Am. Van Lines, Inc.*, 587 N.E.2d 118, 125-26 (Ind. Ct. App. 1992); *Plymale v. Upright*, 419 N.E.2d 756, 751 (Ind. Ct. App. 1981). Finally, a fraud claim must be dismissed if it is "merely a repackaged version of [the plaintiff's] breach of contract claim." *Tobin v. Ruman*, 819 N.E.2d 78, 86 (Ind. Ct. App. 2005); *Accord, McKinney v. State*, 693 N.E.2d 65, 73 (Ind. 1998).

a)     **Expressions of Opinion, Expectation, and Value are not Actionable Representations of Fact.**

To plead fraud by misrepresentation, a plaintiff must first plead "a material misrepresentation of past or existing fact." *Wheatcraft*, 825 N.E.2d at 30. "A statement may be characterized as one of fact if the content of the statement is susceptible of 'exact knowledge' at the time the statement is made." *Vaughn v. General Foods Corp.*, 797 F.2d 1403, 1411 (7th Cir. 1986) (citing Indiana law). Therefore, expressions "of opinion or which relate[] to future or contingent events, expectations or probabilities, rather than to pre-existent or present facts, ordinarily do not constitute an actionable misrepresentation" for either actual or constructive fraud. *SMC Corp. v. Peoplesoft USA, Inc. (SMC I)*, No. 1:00CV1095-LJM-VSS, 2004 WL 828226, at *2 (S.D. Ind. March 15, 2004); *See also ABN*, 429 F. Supp.2d at 1041 ("The law is clear that fraud cannot be premised on representations that 'relate to the future, as opposed to past or existing facts.'") (quoting *Anderson v. Indianapolis, Ind. AAMCO Dealers Adver. Pool*, 678 N.E.2d 832, 837 (Ind. Ct. App. 1997)).

Consequently, predictive statements do not constitute fraud. *See Gallagher v. Abbot Labs*, 269 F.3d 806, 811 (7th Cir. 2001); *Perry v. Eastman Kodak Co.*, 1991 U.S. Dist. LEXIS 20914 (S.D. Ind. April 22, 1991) ("Indiana law requires a misrepresentation of an actual past or present fact, and expressions of opinion and announcements of future intention are not enough."). Likewise, expressions of "hope, or expectation" are not actionable. *Paulson v. Centier Bank*, 704 N.E.2d 482, 490 (Ind. Ct. App. 1998); *See also Anderson*, 678 N.E.2d at 837. Finally, "an appraisal is a matter of opinion, and is not, therefore, actionable under a theory of fraud." *Wheatcraft*, 825 N.E.2d at 31 (noting that "statements of value are regarded as mere expressions of opinion."). These same principles apply to fraudulent omissions, which are actionable as "implied misrepresentations when the circumstances are such that a failure to communicate a

14

fact induces a belief in its opposite." *Midwest Commerce Banking v. Elkhart City Centre*, 4 F.3d 521, 524 (7th Cir. 1993).

b)        **Parties Dealing At Arm's Length Have No Right Of Reliance.**

Reliance implicates both the fact of reliance and the right of reliance. *See Circle Center Co. v. Y/G Ind.*, 762 N.E.2d 176, 180 (Ind. Ct. App. 2002), *trans. denied*, 774 N.E.2d 518 (Ind. 2002); *Prall v. Ind. Nat. Bank*, 627 N.E.2d 1374, 1379 (Ind. Ct. App. 1994). The right to rely "depends largely on the facts of the case," and is a question for the jury when the evidence is conflicting. *Prall*, 627 N.E.2d at 1379; *Plymale*, 419 N.E.2d at 761 n.4. However, the Court may determine the right of reliance as a matter of law "'[w]here the evidence is so clear as to be susceptible of only one reasonable inference.'" *Plymale*, 419 N.E.2d at 763 (citation omitted).

The right of reliance is "tightly bound up with [KIK's duty] to be diligent in safeguarding [its] interests." *Id.* at 762. To be justifiable reliance, "there must be a dominant and a subordinate party." *Pugh's IGA v. Super Food Servs., Inc.*, 531 N.E.2d 1194, 1198 (Ind. Ct. App. 1988); *See also Murphy v. Mellon Accountants P.C.*, 538 NE.2d 968, 970 (Ind. Ct. App. 1989). Thus, Indiana courts consistently find no right to rely as a matter of law when adverse parties of equal bargaining power deal at arm's length. *See Roberts v. Agricredit Acceptance Corp.*, 764 N.E.2d 776, 779 (Ind. Ct. App. 2002); *Prall*, 627 N.E.2d at 1379; *Comfax*, 587 N.E.2d at 125-26; *Neff v. Ind. State Univ. Bd. of Trs.*, 538 N.E.2d 255, 258 (Ind. Ct. App. 1989); *Plymale*, 419 N.E.2d at 762 ("[I]t is also settled that where persons stand mentally on equal footing and in no fiduciary relation, the law will not protect one who fails to exercise common sense and judgment.").

For example, Wisconics purchased a closely-held, family-run corporation called Fisher Engineering through a stock purchase transaction in *Wisconics Eng'g, Inc. v. Fisher*, 466 N.E.2d 745, 748 (Ind. Ct. App. 1984). Wisconics claimed that Fisher had fraudulently induced it to enter into the transaction due to representations regarding the value, profitability, and condition

of the company. *Id.* at 755. In rejecting Wisconics' claim, the court noted:

> Where representations regard the value, quality, or condition of real property, a purchaser has no right to rely upon the representations of the vendor if there is reasonable opportunity to examine the property and to judge its value and qualities for himself. Misrepresentations as to value cannot ordinarily constitute fraud because they are generally to be regarded as mere expressions of opinion or 'trader's talk' involving a matter of judgment and estimation as to which men may differ . . . . Where the parties deal at arm's length with equal means of knowledge, it is obvious that there can be no redress for misrepresentations as to value, because in such a case the hearer should investigate and judge for himself. He has no right in such a case to rely on the speaker's representations as to value, and if he does so and suffers injury it is his own folly, for which the law will grant no relief, and this is especially true where the relation of the parties is antagonistic, or where the hearer has made an investigation before acting.

*Id.* at 756 (citations and quotations omitted).

Fisher had provided Wisconics' principals with five years of audited financials, unaudited financials for the partial year preceding the sale, and met at least once in person prior to the sale. *Id.* at 758. In addition, the principals were "both men of considerable business expertise." *Id.* Because these men "stood on equal footing with Fisher and had a duty to exercise ordinary prudence and diligence to ascertain the truth," the court found that Wisconics had no right to rely as a matter of law, particularly absent specific designations of false information which had been asserted as true. *Id.* at 757-58; *See also Jarvis Drilling, Inc. v. Midwest Oil Producing Co.*, 626 N.E.2d 821, 826-27 (Ind. Ct. App. 1993) (finding that the plaintiff "did not and could not" rely on the defendant's misrepresentation when the defendant produced documents illustrating the truth during due diligence). The reasoning in *Fisher* is applicable here.

### c) KIK's Common Law Fraud Claim Fails Under 12(b)(6).

As described, KIK's Allegations 8 and 9 fail under Rule 9(b). While Allegations 1-7 and 11-14 also fail under Rule 9(b), they also fail under Rule 12(b)(6), as does Allegation 10.

The Sellers' projection of EBITDA of at least $12 million for FY2005 (Allegation 1) is a prediction or statement of expectation. When made, there were still two months left in FY2005. Moreover, actual FY2005 did in fact exceed $12 million (and KIK does not appear to allege differently). *CC* ¶¶ 63, 72 (citing only the unaudited financials through July 2005). Likewise, the Sellers' statements that the financials provided to KIK were the "best and most accurate available" is an opinion. Consequently, Allegation 1 and these portions of Allegation 2 fail.

The remainder of Allegation 2 (August and September 2005 "results" were available), as well as Allegations 3 and 5, rely on documents which, on their face, show that KIK has no basis for asserting that financial "results" for any portion of August or September 2005 were available prior to their production on September 13 and October 18, 2005, respectively. *See* Exh. 4, 8. These alleged "results" in fact state that they are "projections" for every week of both months. *Id.* Because projections themselves are not actionable, their omission cannot be as a matter of law. Moreover, KIK had the *actual* results for August five weeks before closing, the *actual* results for September three days before closing, and still has not asserted any factual basis for claiming these true "results" are inaccurate. Therefore KIK's Allegations 2, 3 and 5 fail.

Although Allegation 4 does not clearly plead fraud or fraudulent inducement, it fails under either cause of action. According to KIK, unknown Sellers at some unknown time requested that due diligence be completed by September 7, 2005 out of a "concern for" or a "need to resume" negotiations with another interested buyer. *See CC* ¶¶ 40-41. The parties, however, in fact agreed in their August 26, 2005 letter agreement to close due diligence on September 11, 2005. *See* Exh. 1. Two days later, the Sellers allegedly told the other buyer that they were no longer interested in selling. *See CC* ¶ 42. Under a fraud theory, this claim fails because the Sellers' statements are expressions of hope, desire, or concern. KIK also fails to state

17

a claim for fraudulent inducement because any "inducement" relates to the terms of the letter and not to the SPA. According to the pleadings, the letter agreement was a non-binding option and, as the letter agreement itself shows, the due diligence period extended until September 11, 2005, not September 7. *Id.* ¶ 24, 40, 47; *See also* Exh. 1. Therefore, KIK has no damages as a matter of law. *Accord Am's. Directories v. Stellhorn One Hour*, 833 N.E.2d 1059, 1068 (Ind. Ct. App. 2005) (discussing the remedies available for fraudulent inducement, both of which presuppose an enforceable contract).

Even if the Sellers' "representations" related to the SPA itself (which they do not) *and* KIK had any right to rely on them (which it did not), the SPA has an integration clause which clearly states that the SPA "set[s] forth the entire understanding of the Parties with respect to the transactions . . . [and] supersede[s] all prior discussions, understandings, agreements and representations and shall not be modified or affected by any prior or contemporaneous offer, proposal, statement or representation, oral or written, made by or for any Party in connection with the negotiation of the terms hereof." *See SPA* § 11.9.

Regarding Allegation 6, KIK implies that Bachman made a statement of past or existing fact by failing to provide the September 22, 2005 email in which, according to KIK, Bachman states he believed there were "inventory issues beyond reserves" *CC* ¶59. However, the full email shows that Bachman *assumed* escrow funds would be reduced, and that one of four issues that "could" create this reduction was a guesstimate that the reserve set aside for inventory issues might be understated by $500,000. *See* Exh. 7. Like his statement that he was "nervous about working capital and related bank loan assumptions," these statements regarding Bachman's estimate of the reserves needed to deal with future inventory issues was nothing more than a guesstimate arising from an assumption, neither of which are statements of fact.

Allegation 7, that the Sellers defrauded KIK because the first 10 months of financials were allegedly inconsistent with GAAP with regard to various accrual, receivables, and reserve issues, fails under a combination of Rule 9(b) and Rule 12(b)(6).  First, all three of KIK's allegations that the Sellers' failed to provide supporting documentation for accounts receivables are based on "information and belief" with no supporting facts.  *Id.* ¶ 72(a), (b), and (e). The remaining allegations merely question whether various accounting decisions, largely dealing with the accrual of reserves and the future collectibility of certain receivables, comply with GAAP. *Id.* ¶ 72(c), (d), (f), (g). KIK's allegation that these decisions were "fraudulent" repackages a working capital claim as fraud. *See Tobin*, 819 N.E.2d at 86.  In addition, KIK had no right to rely on any of these unaudited financials.  At all times, KIK was on equal footing and dealt at arm's length with the Sellers. KIK possessed these financials *before* KIK offered its non-binding option to purchase APG, began due diligence, or made its final binding offer.  KIK itself alleges that it conducted "intensive and accelerated due diligence" before signing the SPA.  *CC* ¶45.  Under *Fisher*, Allegation 7 fails as a matter of law.  *See* 466 N.E.2d at 755-56.  Moreover, as discussed below, pleading these types of GAAP disputes fails to adequately allege fraud.  And finally, these allegations, which are derived from the unaudited financial statements through July 31, 2005 do not even address, let alone dispute, the EBITDA figures that would be actually derived from the September 2005 financials (which would be the basis for the actual FY 2005 EBITDA). *See CC* ¶¶ 66-68 and  Exh. 23.

Allegations 11 and 12 claim that the Sellers (or APG) failed to budget accurately for future cost overruns. These allegations are either simply claims of mismanagement or relate to predictions of future cost (which are not even alleged to have occurred pre-closing), neither of which properly allege actionable fraud.  Finally, Allegations 10, 13, 14, and the claim of

19

additional "fraudulent breaches of representations and warranties" also must be dismissed under Rule 12(b)(6) as repackaged versions of KIK's breach of contract claims. *See Tobin*, 819 N.E.2d at 86; *See also CC* ¶ 83 (alleging that Shah's non-disclosure was in violation of SPA § 3.19).

KIK's common law fraud counterclaim bootstraps allegations "on information and belief" to opinion and predictive statements and then to omissions of information which, even had it been provided, would not be actionable. Not only does the counterclaim fail for lack of specificity under Rule 9(b), it substantively fails under Rule 12(b)(6) as a matter of law.

### B. KIK's Criminal Mischief and Deception Counterclaims Fail.

KIK's criminal mischief/deception counterclaims fail as a matter of law because they rest on the same allegations as KIK's common law fraud claims. *See McConnell & Sons, Inc. v. Target Data Sys.*, 84 F. Supp.2d 980, 987 (N.D. Ind. 2000); *SMC v. Peoplesoft USA, Inc. (SMC II)* No. 1:00CV1095-LJM-VS, 2004 WL 2538641, at *5 (S.D. Ind. Oct. 12, 2004). As in *Target*:

> The sum and substance of defendant's allegations of criminal statutory violations rest upon its contention that plaintiff committed fraud -- indeed, defendant does not deny that, if its fraud allegations are defective and its criminal claims rest of fraud, then this counterclaim must be dismissed. Given the allegations contained in the counterclaim, it is clear that the claim rests upon defendant's contention that plaintiff engaged in fraud. As the drafter of the claim, defendant is the master of its pleading, and as such can plead itself out of court by pleading assertions which undermine its claim.

84 F. Supp.2d at 987 (internal citations omitted).

For the same reasons, therefore, KIK's criminal counterclaims must be dismissed.

### C. KIK's Securities Fraud Claim Fails As a Matter of Law.

The PSLRA, which governs private securities litigation, "essentially returns the class of cases it covers to a very specific version of fact pleading – one that exceeds even the particularity requirement of [Rule 9(b)]." *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 594 (7th Cir. 2006). To plead a securities fraud claim under Section 10(b), 15 U.S.C. §78(j), and SEC

Rule 10b-5, 17 C.F.R. 240.10b-5(b), a plaintiff must plead and prove: (1) the defendant made a false statement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities (5) upon which the plaintiff justifiably relied and (6) that the false statement proximately caused the plaintiff's damages. *Id.* at 595. Under the PSLRA's heightened pleading rules,  a securities fraud claim must "(1) specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading …" and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(1), (2). These additional requirements have "made it substantially harder for plaintiffs to pursue lawsuits alleging securities fraud." *In re Brightpoint Sec. Litig.*, 2001 WL 395752, at *30 (S.D. Ind. March 29, 2001).

Here, KIK has not pleaded securities fraud adequately because it has failed to: (1) allege properly that each individual Seller acted with scienter; (2) allege *with particularity* any material misrepresentations or omissions made by each individual Seller; and (3) allege loss causation for any of the misrepresentations or omissions of material fact made by each of the Sellers.

**1.    Group Pleading Is Impermissible Either for Pleading Scienter or Material Misrepresentations Or Omissions.**

Throughout KIK's counterclaim, KIK refers simply to "the Sellers." However, the Seventh Circuit expressly rejected this method of "group pleading" in *Makor*, 437 F.3d at 594.

The *Makor* court noted that the PSLRA requires "that the complaint 'state with particularity facts giving rise to a strong inference that *the defendant* acted with the required state of mind.'" *Id*. (quoting PSLRA § 78-u4(b)(2) (emphasis in original)). The court then concluded that "'PSLRA references to 'the defendant' may only reasonably be understood to mean 'each defendant' in multiple defendant cases, as it is inconceivable that Congress intended liability of any defendants to depend on whether they were sued in a single action or were each sued alone

21

in several separate actions.'"  *Id*. at 602-603 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 365-66 (5th Cir. 2004)).   Thus, the "'group pleading doctrine … cannot withstand the PSLRA's specific requirement that untrue statements or omissions be set forth with particularity as to 'the defendant' and that scienter be pleaded with regard to 'each act or omission' sufficient to give 'rise to a strong inference that the defendant acted with the required statement of mind.'"  *Southland*, 365 F.3d at 364-65 (cited with approval in *Makor*, 437 F.3d at 603).

Though *Makor* specifically addressed pleading scienter, the Court's logic applies equally to prohibit a plaintiff from using "group pleading" to satisfy its obligation to identify the specific misrepresentations or omissions.  According to the PSLRA, where a plaintiff alleges that "*the defendant*" made a material misstatement or omission, "the complaint shall specify *each statement* alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. §78u-4(b) (emphasis added).  The Seventh Circuit, and others, already have rejected "group pleading" for misrepresentations, sometimes even in non-securities cases where the PSLRA has not raised the bar.  *See, e.g*, *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 730 (7th Cir. 1998) (stating that Rule 9(b) "is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'") (internal quotations and citations omitted); *Sears v. Likens*, 912 F.2d 889, 892 (7th Cir. 1990) ("A complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient"); *Friedman v. Rayovac Corp.*, 295 F. Supp. 2d 957, 993 (W.D. Wis. 2003) ("to satisfy the requirements of the [PSLRA], plaintiffs must alleged facts suggesting some particularized basis for concluding that

22

each defendant 'made' the statement at issue").

Almost all of KIK's allegations in its securities fraud counterclaim should therefore be disregarded. These numerous, generic allegations regarding what "the Sellers" allegedly said and/or knew do nothing to raise a strong inference of scienter as to any Seller individually or even identify which individual Seller "made" a particular alleged misrepresentation or omission. *See, e.g., CC* ¶¶ 104-05, 110-11.

**2.      KIK Has Not Adequately Pleaded Scienter With Respect To Each Defendant.**

The PSLRA created a new requirement for securities fraud cases which now requires that a plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §78u-4(b)(2). In other words, the PSLRA "unequivocally raise[d] the bar for pleading scienter. Not only must plaintiffs meet a particularity requirement; they must also meet a substantive requirement by pleading sufficient facts to create 'a strong inference' of scienter." *Makor*, 437 F.3d at 601. The state of mind required to establish scienter is an intent to deceive or at least recklessness which is "an extreme departure from the standards of ordinary care, [] which presents a danger of misleading buyers . . . that is either known to the defendant or is so obvious that the actor must have been aware of it." *Id.* at 600. Plaintiffs must satisfy this pleading requirement "with respect to each individual defendant in multiple defendant cases." *Id.* at 603.

KIK's attempt seems to be simply its allegation that "Sellers made such material misrepresentations and omissions intentionally, knowingly, and with reckless disregard for the truth of such statements, and the likelihood for such omissions to mislead KIK." *CC* ¶110. This general averment does not come close to satisfying the PSLRA's requirement that KIK, for each defendant, "state with particularity facts giving rise to a strong inference that the defendant acted" with scienter. 15 U.S.C. §78u-4(b)(2).

23

Since KIK's counterclaim consists almost entirely of group pleaded allegations, the particular facts that would give rise to a strong inference of scienter are essentially non-existent. KIK scarcely makes any allegations with respect to any particular Seller. Even a collective, expansive reading KIK's allegations shows a failure to plead scienter. Scienter can, in some cases, be pleaded by demonstrating "either motive and opportunity or a strong circumstantial evidence of recklessness or conscious misbehavior." *Makor*, 437 F.3d at 601; *see also Last Atlantis Capital LLC v. Chicago Board Options Exch., Inc.*, 2006 U.S. Dist. LEXIS 74038, *15 (N.D. Ill. Sept. 13, 2006) ("The complaint may plead facts showing motive and opportunity, but there still must be *specific* facts supporting a strong inference that the defendant acted with [scienter]."). KIK has pleaded neither method properly.

KIK's overarching theory seems to be that Sellers' intent derives from their desire to maximize the value of APG's FY2005 EBITDA or make sure it was at least $12,000,000 in order to maximize the sale price for the company. However, maximizing the value of a company is *always* the interest of every corporate officer and shareholder; hence that motivation cannot be evidence of an intent to commit fraud. *See, e.g., Stavros v. Exelon Corp.*, 266 F.Supp.2d 833, 848 (N.D. Ill. 2003) ("maximizing both earning potential on corporate debt offerings and executive compensation are the goals of all corporate executives; as such, they do not even remotely suggest fraudulent motivation") (internal quotations and citations omitted); *Brightpoint*, 2001 WL 395752, at *13 ("A plaintiff cannot allege scienter based merely upon a defendant's position within the company, a desire to increase incentive compensation, or similar factors that would be true for nearly all corporate executives."). KIK has simply alleged that Sellers shared the same motivations as all officers and shareholders in for-profit entities. Such pleading, particularly with the generality KIK has alleged, falls short of pleading specific facts giving rise

24

to a "strong inference" of scienter.

KIK's other approach seems to be to try to plead "strong circumstantial evidence of recklessness or conscious misbehavior." *Makor*, 437 F.3d at 601. "Where motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (citation omitted). KIK has not pleaded specific facts supporting a "strong inference" of scienter this way either.

KIK appears to attempt to plead "strong circumstantial evidence of recklessness or conscious misbehavior," *Makor*, 437 F.3d at 601, via several methods that courts have repeatedly found to be inadequate. (Of course, KIK's allegations are further hampered by the pervasiveness of its improper group pleading.). In general and conclusory fashion, KIK has pleaded: (1) a number of vague "facts" that KIK claims Sellers "knew" were "false"; (2) that "facts" revealed later should have been disclosed earlier and that the "failure to disclose" earlier constitutes scienter; (3) allegations of corporate mismanagement which, even if true, do not state a claim; and (4) various generalized GAAP violations. None of these approaches satisfies the PSLRA's pleading requirements.

Simply alleging in conclusory fashion that Sellers "knew" various representations were false, presumably because of their position in APG (though even that is not adequately alleged), fails to satisfy the PSLRA's scienter pleading requirements. *See, e.g.*, *Johnson v. Tellabs, Inc.*, 303 F.Supp.2d 941, 967 (N.D. Ill. 2004) ("General imputations of knowledge do not suffice, *regardless of the defendants' positions within the company*.") (emphasis added) *Premier Capital Mgmt., L.L.C. v. Cohen*, 2003 WL 21960357, *5 (N.D. Ill. 2003) ("Conclusory allegations that defendants acted with knowledge that the representations were false and misleading" does not

satisfy PSLRA).

Pleading that matters which came to light later (such as the cost overruns for the distribution center) should have been disclosed earlier is the classic "fraud by hindsight" which fails to satisfy the PSLRA.  *See, e.g.*, *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 53 (2d Cir. 1995) ("Mere allegations that statements in one report should have been made in earlier reports, [however], do not make out a claim of securities fraud."); *Brightpoint*, 2001 WL 395752, at *18 ("[T]he mere allegation that the company 'must have known' the bad news before the date of disclosure is the essence of fraud by hindsight and will not sustain a securities fraud claim."); *In re First Union Corp. Sec. Litig.,* 128 F.Supp.2d 871, 894 (W.D.N.C. 2001) ("[t]he mere fact that accounting adjustments were made in one period does not support an inference that they should have been made in another period as well.").

Similarly, KIK's vague allegations with regard to the collectibility of various accounts receivable is in essence a dispute about whether or when certain assets should be written off. Seventh Circuit courts have repeatedly concluded that such allegations do not state claims for fraud.  *See, e.g.*, *DiLeo* 901 F.2d at 627 ("If all that is involved is a dispute about the timing of the writeoff, based on estimates of the probability that a particular debtor will pay, we do not have fraud; we may not even have negligence."); *Kriendler v. Chemical Waste Mgmt.*, 877 F.Supp. 1140, 1153 (N.D. Ill. 1995).

KIK makes a number of allegations regarding the opening of the new distribution center. Even if true, these allegations simply allege mismanagement,  which is not the basis for a Section 10(b) claim.  *See, e.g., In re Westinghouse Sec. Litig.,* 832 F.Supp. 948, 968-69 (W.D. Pa. 1993), *aff'd in part, rev'd in part on other grounds*, 90 F.3d 696 (3d Cir. 1996) ("Making additional commercial real estate loans at below market rates to a struggling debtor . . . is risky, may be

26

wrongheaded, may even be gross mismanagement, but it is not fraudulent. . . . Tacking the phrase 'in order to conceal losses' onto the end of such an allegation does not convert it from an allegation of mismanagement into a fraud claim any more than does inserting the words 'defendants failed to disclose that . . .' before the claimed mismanagement."); *Brightpoint*, 2001 WL 395752, at *19 ("[m]ismanagement, a poorly timed shift in business strategy, or even negligence on the part of [the company's] management as to its optimism . . . , will not support a claim of securities fraud.").

Finally, KIK makes vague allegations that some of APG's accounting decisions in its *unaudited* financial statements through July 2005 violated certain unidentified GAAP principles. However, simply pleading GAAP violations is not enough. *See Chill v. General Elec. Corp.*, 101 F.3d 263, 270 (2d Cir. 1996) ("Allegations of a violation of GAAP provisions or SEC regulations, without corresponding fraudulent intent, are not sufficient to state a securities fraud claim."). "'Generally accepted accounting principles' ... tolerate a range of 'reasonable' treatments, leaving the choice among alternatives to management." *Thor Power Tool Co. v. Comm'r Int. Rev.*, 439 U.S. 522, 544 (1979); *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1020 (5th Cir. 1996). Therefore, even if KIK identified what accounting decisions violated what GAAP principles (which it does not), alleging GAAP violations is insufficient by itself to raise a strong inference of scienter. *Brightpoint*, 2001 WL 395752, at *26-29; *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 553 (6th Cir. 1999).

KIK has not pleaded scienter adequately even with respect to the Sellers collectively. It certainly has failed to plead scienter with respect to each person against whom it has asserted a securities fraud claim as the PSLRA requires. Therefore, KIK's claim should be dismissed.

3.   **KIK Has Failed to Properly Plead That Each Counter-defendant Made Misrepresentations or Omissions of Material Fact.**

The PSLRA also requires that "the complaint shall specify *each statement* alleged to have been misleading, the reason or reasons why the statement is misleading" or face dismissal. *See* 15 U.S.C. §78u-4(b)(1); *Brightpoint*, 2001 WL 395752, at *4 (dismissal required where complaint fails to "identify each of the allegedly material, misleading statements."). As with common-law fraud, these misstatements must be of present or existing fact, not some prediction of the future. *See Vaughn*, 797 F.2d at 1411.

Despite having complete access to APG's books and records for over a year since the sale of APG, KIK has failed woefully to satisfy this requirement. None of KIK's allegations are sufficiently specific with respect to what has been misrepresented or omitted or explain why a particular representation was misleading. For example, KIK alleges that "a failure to appropriately reserve for certain inventory" resulted in a $1.1 million overstatement of EBITDA for the period ending July 31, 2005." *CC* ¶70. What inventory, the amount of reserves taken, why those reserves were insufficient, and whether there were ever losses attributable to that inventory are among the necessary specifics that KIK has improperly omitted.

Moreover, rather than point to any particular Seller's representations of existing fact regarding APG's financial condition, KIK instead points to how quickly certain information was disclosed and makes vague, unsubstantiated complaints about APG's estimates of various future events. Such pleading does not satisfy the PSLRA's heightened pleading standards.

KIK alleges that Sellers did not provide certain partial pro formas as quickly as KIK wanted (Allegations 3, 5), but it admits that it did receive the actual August financial results before the SPA was signed in September and the actual September financial results before the transaction closed in October. *See CC* ¶¶ 47, 63-64. Allegations that a party failed to disclose

28

what it in fact disclosed cannot constitute fraud. *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp.2d 358, 375 (E.D.N.Y. 2003) ("Even at the pleading stage, dismissal is appropriate where the complaint is premised on the nondisclosure of information that was actually disclosed.").

KIK makes a number of allegations which are essentially complaints about APG's projections of future events, such as projections made in July regarding APG's full-year FY2005 EBITDA (Allegation 1), the size of various reserves APG set aside (Allegation 6), and other projected expenses and reserves (Allegation 7). Clearly, a representation in July about the earnings or losses APG would have for FY2005 (which ended on October 31, 2005) cannot be a representation of existing fact. Similarly, complaints about the size of reserves or the accrual of various expenses also are not representations of existing fact and therefore are not actionable under the PSLRA. *See, e.g.*, *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 242 (3d Cir. 2004) (reserves are "prediction about its future claims experience . . . [which] could only be verified when liability claims were actually filed, litigated to conclusion, or settled. It would seem rather beyond argument that such projections . . . are forward-looking [under] the PSLRA."). *Banking & Sav., F.A. v. Arthur Young & Co.*, 706 F.Supp. 1408, 1412 (D. Minn. 1988) (holding that reserves involve economic forecasting, not reporting known facts).

KIK also complains about the collectibility of certain generally alleged accounts receivable identified in APG's July financials. *CC* ¶72; Allegation 7. Complaining that these accounts receivable should have been written off sooner, however, does not adequately allege a fraudulent misstatement of fact. *DiLeo*, 901 F.2d at 627; *Grassi v. Information Resources, Inc.*, 63 F.3d 596, 600 (7th Cir. 1995) ("Plaintiffs essentially claim that IRI should have written off its bad investment sooner -- but this is not fraud.").

Lastly, KIK also complains about various other future events, such as the "potential

issues" associated with the completion of the distribution center which could result in cost overruns, *CC* ¶¶ 86, 92, 93 (Allegations 11, 12, and 13), the amount of sales it expected to make after the transaction closed (Allegations 9 and 10), or predicting the impact of the sale on APG's software licenses (Allegation 14). These "potential issues" clearly deal with predictions about future events which therefore do not constitute statements of existing fact. Further, to the extent KIK alleges that such issues should have been predicted differently and additional reserves set aside to account for them, these are also simply repackaged mismanagement claims which do not constitute a misrepresentation or omission sufficient to plead Section 10(b). *See Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477-78 (1977).

KIK's securities fraud claim fails because it simply relies on group pleading rather than attributing particular statements of fact to particular Sellers. However, even when examining KIK's group pleaded allegations, KIK has failed to "specify *each statement* alleged to have been misleading, the reason or reasons why the statement is misleading." As a result, KIK's Section 10(b) claim should be dismissed for failure to comply with the PSLRA's pleading standards.

**4.      KIK Has Failed to Plead Loss Causation Properly.**

Lastly, KIK's Section 10(b) claim fails because KIK has not pleaded "loss causation" as the PSLRA requires. To state a viable Section 10(b) claim, KIK must allege that "the act or omission of the defendant alleged to violate [§10(b)] caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. §78u-4(b)(4). As the Supreme Court explained last year in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), this means that a plaintiff asserting a securities fraud claim not only must plead that the fraud induced the plaintiff to enter into the securities transaction, the fraudulent misrepresentation(s) or omission(s) must also have caused the party to suffer an economic loss. *Id.* at 346-47. A plaintiff, therefore, must allege facts that, if proven, will establish "a causal connection between the material misrepresentation" that he

30

alleges and the decline in the company's share value. *Id.* Thus, in the context of publicly-traded securities, a plaintiff must allege that "when the facts bec[a]me generally known" regarding the supposed misrepresentation, the "share value depreciate[d]." *Id.* at 1633; *see, e.g., United States v. Olis*, 429 F.3d 540, 546 (5th Cir. 2005) ("Thus, there is no loss attributable to a misrepresentation unless and until the truth is subsequently revealed and the price of the stock accordingly declines.").

In this case, KIK has not adequately pleaded "a causal connection between the material misrepresentation and the loss" for two fundamental reasons. *Dura*, 544 U.S. at 342. First, KIK has not even identified the loss it purportedly suffered. Nor could it at this stage because KIK has not yet even completed the Net Working Capital Adjustment procedure prescribed in SPA §§ 2.1 through 2.4 to determine the final amount KIK actually paid Sellers for their shares. At this point, therefore, there remains at least $3,000,000 in escrow which may (or may not) be returned to KIK based on the final resolution by the Accountants of the parties' dispute regarding the Closing Date Balance Sheet (which is the subject of Sellers' pending motion to compel arbitration). Therefore, at this point, KIK cannot allege that, once the "true" facts were learned, the value of the shares KIK acquired decreased or that KIK otherwise suffered an economic loss.

Second, KIK has not adequately connected the alleged misrepresentations or omissions with the loss KIK allegedly suffered. Indeed, the $78 million preliminary purchase price was based on a full FY2005 EBITDA of $12 million, and KIK concedes that the final FY2005 EBITDA, as derived from the September 2005 financials, exceeded $12 million. *CC* ¶63. Nowhere in KIK's counterclaim does KIK point to any misstatements in the September 2005 and FY2005 financials to dispute that. The closest KIK comes are its allegations that the unaudited financials for July 2005 did not comply with GAAP and overstated EBITDA for the period

31

ending July 31, 2005. *CC* ¶70-73. However, these allegations -- which are only based on financials through July -- do not dispute the validity of the full FY2005 financials (created after the year closed on September 30, 2005) which APG provided to KIK before closing. Any suggestion to the contrary is belied by the documents themselves which are clearly financial statements as of July 31, 2005. *See Massey*, 464 F.3d at 645.

Because KIK does not connect any alleged misrepresentations or omissions to its alleged loss (assuming it identified one), KIK has not pleaded loss causation properly as *Dura* requires. For this reason as well, KIK's securities fraud counterclaim must be dismissed.

### D.  The Declaratory Judgment Counterclaims Fail as a Matter of Law

It is undisputed that Indiana law governs Bachman and Theroux's employment contracts with APG. *See* Exh. 9-10 at § 15. In Indiana, "[i]nterpretation of a contract is a pure question of law . . . ." *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 251 (Ind. 2005). Clear and unambiguous terms "must be given "their clear and ordinary meaning." *Id.* In addition, contractual provisions should be read in harmony so that no phrase is rendered superfluous. *See id.; Travelers' Protective Ass'n v. Jones*, 127 N.E.2d 783, 785 (Ind. Ct. App. 1920). Furthermore, "[w]ords will generally be construed most strongly against the party who used them." *South Bend v. Blue Lines, Inc.*, 38 N.E.2d 573, 575 (Ind. 1942) (construing "throughout the city" most strongly against the City of South Bend, who drafted the contract).

A "successor in interest ordinarily refers to a corporation that by a process of amalgamation, consolidation or duly authorized legal succession, has become invested with the rights and has assumed the burdens of [another] corporation." *C&J Builders & Remodelers, LLC v. Geisenheimer*, 733 A.2d 193, 195 (Conn. 1999) (quotation and citation omitted). Stockholders are not considered "successors in interest" until a corporation dies. *See, e.g., DeGroff v. Comm'r of IRS*, 54 T.C. 59, 74 (U.S. Tax Ct., 1970), *aff'd*, 444 F.2d 1385 (10th Cir. 1971); *Andrew*

*Johnson Bank v. Crumley*, 699 S.W.2d 164, 166 (Tenn. Ct. App. 1985) (noting that stockholders became the successors in interest to dissolved corporations); *Serv. Lumber Co. v. Sumpter Valley Ry Co.*, 158 P. 175, 176 (Or. 1916) ("The stockholders of the corporation have an equitable, beneficial interest in the corporate property during the life of the corporation, and *when it dies such interest ripens into legal title* and necessarily vests in . . . the stockholders)(emphasis added). There is simply no legal support for the theory that a shareholder is a "successor in interest," under the plain and ordinary meaning of those words, to a continuing corporate entity.

Here, the purported assignment to KIK does not comply with the assignment clause in Bachman and Theroux's Employment Agreements. First, the purported assignment clearly did not occur "in connection with" the sale of APG. The phrase "in connection with" must be construed against KIK. *See Blue Lines*, 38 N.E.2d at 575. The assignment did not occur upon sale of APG to KIK, but rather one year after the fact. The only event which occurred in connection with the sale was the *creation* of the Employment Agreement.

Second, although the clause describes a "successor in interest" to include a parent company, KIK is not a "successor in interest" as that phrase is commonly understood because APG is an ongoing concern. *See DeGroff*, 54 T.C. at 74. KIK may be able to assume the legal rights of APG under the Employment Agreements at some point in the future. However, KIK cannot obtain those rights through assignment at this time because the plain language of the assignment clause limits non-sale assignments to successors in interest. To hold otherwise would render the phrase "or in connection with the sale to any person, partnership, corporation or other entity" superfluous: There would be no need to provide for assignment upon sale if the buyer was also a successor in interest. Consequently, the assignment is invalid under either option set forth in the assignment clause. In sum, the purported assignment violated state law. Because

this is simply a question of contract interpretation, KIK's declaratory judgment claims can and should be dismissed as a matter of law.

## IV.  CONCLUSION

KIK is a sophisticated business entity.  It entered into an option agreement to acquire APG for $78 million. Following its own "intensive" due diligence, KIK negotiated at arms' length with the Sellers to effect a $5 million reduction in the purchase price,  exercised its option and acquired APG for $73 million, less a still-to-be-determined post-closing adjustment.  Now KIK apparently regrets some of the aspects of the SPA it negotiated with Sellers and wants a different deal, claiming it was defrauded.  However, KIK has not pled any misrepresentations or omissions that would constitute actionable fraud, despite having control of APG's financial records for a year.

For the foregoing reasons, the Counter-defendants respectfully request that this Court dismiss in their entirety all of the counterclaims filed by KIK, and for all other appropriate relief. KIK has failed to plead fraud with specificity under Fed. R. Civ. P. 9(b), failed to state a claim under Fed. R. Civ. P. 12(b)(6), and failed to satisfy the pleading requirements of the PSLRA. Alternatively, this Court should stay KIK's counterclaims pending resolution of the Net Working Capital Adjustment process for the reasons set forth in the Sellers' *Consolidated Brief in Opposition to Defendant's Motion to Dismiss, and in Support of Cross Motions for Immediate Stay of the AAA Arbitration, for a Hearing to Determine Arbitral Forum, and to Compel Arbitration Before Ernst & Young*, filed on November 27, 2006.  (Doc.# 20)

34

Respectfully submitted,

BARNES & THORNBURG LLP


By  /s/  Timothy J. Abeska
Timothy J. Abeska (3998-71)
*tim.abeska@btlaw.com*
Robert G. Devetski (13957-71)
*robert.devetski@btlaw.com*
Brian E. Casey (23263-71)
*brian.casey@btlaw.com*
Kelly J. Hartzler (24929-20)
*kelly.hartzler@btlaw.com*
600 1st Source Bank Center
100 N. Michigan Street
South Bend, Indiana  46601
(574) 233-1171 (telephone)
(574) 237-1125 (facsimile)
Counsel for Plaintiffs/Counter-defendants

CERTIFICATE OF SERVICE

I hereby certify that a copy of the above *Brief* was served upon the following attorney of record by filing through the Northern District of Indiana's CM/ECF system on the 14th day of December, 2006.

Drew G.A. Peel
*dpeel@kirkland.com*
Harry N. Niska
*hniska@kirkland.com*
Colby Kingsbury
*ckingsbury@kirkland.com*
Daniel C. Moore
*dmoore@kirkland.com*
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601
Attorneys for Defendant/Counter-Plaintiff


BARNES & THORNBURG LLP


By  /s/  Timothy J. Abeska

35