UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SATISH SHAH, THE SATISH SHAH REVOCABLE TRUST, AMISH SHAH, DEBRA ANN SHAH, ROBERT E. THEROUX, DANIEL L. WILLIAMS and FREDERICK H. BACHMAN<br><br>    Plaintiffs,<br><br>v.<br><br>KIK INTERNATIONAL LLC,<br><br>    Defendant. | CASE NO. 3:06-CV-0712 RM |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE THE DECLARATION OF LOUIS G. DUDNEY**

**I.     INTRODUCTION**

The plaintiffs' motion to strike the declaration of Louis G. Dudney, CPA -- a declaration that was filed by defendant KIK International LLC ("KIK") in rebuttal to the declaration of Marilee K. Hopkins filed by plaintiffs and in support of KIK's opposition to plaintiffs' cross-motion to enjoin an arbitration pending before the American Arbitration Association ("AAA") in Chicago -- should be denied for several reasons.

*First*, plaintiffs' motion to strike the Dudney declaration (as well as KIK's motion to strike certain paragraphs from the Hopkins declaration) should be denied as moot if the Court determines -- as it should -- that it does not have jurisdiction to (a) decide the question of the arbitrability of the indemnity claims KIK has asserted in the AAA arbitration pending in Chicago, or (b) enjoin that arbitration in favor of a truncated working capital dispute resolution process ("WCDRP") that has yet to be commenced before an as-yet-to-be-determined Ernst & Young decisionmaker in an as-yet-to-be-determined venue.

***Second***, plaintiffs' motion to strike the rebuttal Dudney declaration also should be denied if the Court determines that it will not strike the Hopkins declaration. That is because each of the grounds asserted by plaintiffs for striking the Dudney declaration applies with even greater force to the Hopkins declaration plaintiffs submitted, and thus if the Hopkins declaration is sufficient, the Dudney rebuttal declaration is equally sufficient.

***Third***, even if the Dudney declaration is held to a higher standard than the Hopkins declaration (and it should not be), the Dudney declaration easily satisfies that standard.

Contrary to plaintiffs' assertions, Dudney's competence and qualifications to express the opinions in his declaration are adequately established for the purposes of the instant motions -- which are being decided ***before*** any discovery has occurred and ***before*** any experts (including Hopkins) have issued reports pursuant to Rule 26(a)(2).[1]

Further, while plaintiffs decry the purported lack of independent factual support for Mr. Dudney's opinions and his reliance on certain pleadings (and contemporaneous documents appended to those pleadings), the purported expert whose opinions he is rebutting relied exclusively on the very same materials, which is not surprising given the current procedural posture of this case.

Finally, as reflected in KIK's motion to strike the declaration of Hopkins, KIK agrees that expert opinions respecting the proper interpretation and legal effect of the stock purchase agreement ("SPA"), and the characterization of pled claims are inadmissible, and, on that basis, KIK has moved to strike Hopkins' opinions as to such matters. If the Court disagrees, however, then any Dudney opinions regarding such matters also must be admitted. Regardless, most, if not all, of the specific Dudney opinions plaintiffs seek to exclude are not legal opinions at all, but rather merely factual descriptions of the SPA or Mr. Dudney's understanding of the terms set forth in the SPA -- none of which purports to instruct the Court

---

[1] All "Rule" references herein are to the Federal Rules of Civil Procedure.

as to how it should interpret the relevant provisions of the SPA or the legal effect of those provisions.

## II. BACKGROUND

### A. Mr. Dudney's Qualifications For Expressing His Rebuttal Opinions.

While plaintiffs' motion to strike asserts that Mr. Dudney is not qualified to express the rebuttal opinions set forth in his declaration (Pls.' Mot. at 4), his declaration and the exhibit thereto establish otherwise. Specifically, Mr. Dudney's declaration avers that: (1) he was a partner in the financial advisory services group of one of the largest public accounting firms in the country prior to joining his current employer approximately six years ago; (2) he has a degree in accounting from the College of William and Mary; (3) he is a certified public accountant; and (4) he has "over 18 years experience with respect to merger and acquisition transactions and disputes, the accounting for such transactions, ***as well as the damages associated with such disputes***." (Dudney Decl. ¶¶ 2-4 (emphasis added)). Further, as set forth in the *curriculum vitae* ("CV") appended to and incorporated into his declaration as an exhibit, Mr. Dudney has been engaged in connection with numerous matters (whose single-spaced descriptions fill some three pages) to analyze precisely the kind of economic and accounting issues that are raised by the parties here.[2]

In comparison, plaintiffs' purported expert, Marilee Hopkins, simply avers in her declaration that she is an executive in the accounting firm of Crowe Chizek & Co. LLC (the same accounting firm advising plaintiffs in connection with the sale at issue and who was formerly the outside auditor for the company that was sold to KIK) and then refers to her CV. (Hopkins Decl. ¶ 2.) Her CV, in turn, indicates that she: (1) has an accounting degree;

---

[2] For example, one of the selected engagements listed in Mr. Dudney's CV is described as follows: "In a venture capital transaction, determined the ***damages*** associated with fraudulent financial information provided prior to the sale of a software company. This required analysis of corporate financial statements, independent accountants' workpapers and other financial disclosures." (Dudney Decl., Ex. 1 at 3 (emphasis added)). In addition, Mr. Dudney's CV indicates that he has been engaged with respect to at least seven matters involving post-acquisition purchase price, indemnity, and/or working capital disputes similar to the disputes between the parties at issue here. (*See id.* at 1-3.)

3

(2) was associated with an unnamed "national CPA firm" prior to joining Crowe Chizek; (3) is a CPA and a "Certified Valuation Analyst"; (4) had a five-year contract with the United Nations to help calculate damages to Kuwaiti businesses caused by Iraq's 1990 invasion; (5) made presentations or taught courses respecting, *inter alia*, "Damages Due to Wrongful Termination" and "Employment Damages"; (6) co-authored an article respecting expert evidentiary issues in marketing material published by her employer and published an article in a newsletter regarding punitive damages; (7) served as an arbitrator in four "purchase price dispute[s]"; and (8) has worked on a number of matters for which no information is provided beyond the parties involved, the court in which the dispute was pending, and whether she provided a report, deposition, and/or trial testimony. (*Id.* at Ex. A.) Nowhere in Ms. Hopkins' declaration or her CV does she explain the relevance of any of her education, training, or experience to any of the opinions set forth in her declaration. (*Id.*)

### B. The Factual Predicate For Mr. Dudney's Rebuttal Opinions.

The factual basis for the rebuttal opinions set forth in Mr. Dudney's declaration includes the documents to which the declaration cites, Ms. Hopkins' declaration (including the exhibits thereto), and Mr. Dudney's "investigation and the evidence available to date." (Dudney Decl. ¶¶ 1, 6, 35; *see also id.* ¶12 n.6 (referencing August 26, 2005 letter and attachment thereto.) By way of contrast, the only factual materials that Ms. Hopkins indicates were reviewed by her in developing the opinions expressed in her declaration were a "KPMG memo regarding net working capital adjustments" (appended to her declaration as Exhibit B) and "KIK's AAA Demand for Arbitration" (Hopkins Decl. ¶ 6.)

### C. Mr. Dudney's Rebuttal Opinions.

Mr. Dudney's fifteen-page declaration explains at length the economic structure of the transaction at issue -- including the tying of the purchase price to the earnings of the acquired company for the fiscal year ending September 30, 2005, as is customary in transactions like

4

this one, as well as the contractual mechanisms devised by the parties to assure that the working capital of the acquired company met or exceeded the target amount, which are also a typical feature of such transactions. (Dudney Decl. ¶¶ 7-18.) Mr. Dudney's declaration next explains the typical consequence of this economic structure for claims generally arising in connection with such transactions as well as for the specific claims being made for indemnity or for working capital adjustments here, opining that Ms. Hopkins erred in ignoring "these fundamental and typical features of the Transaction at issue here." (Dudney Decl. ¶¶ 19-23.) Mr. Dudney's declaration then proceeds to describe KIK's indemnity claims as they have been pled, describes certain terms in the SPA, and then compares KIK's pled indemnity claims to the plaintiffs' working capital disputes and offers opinions respecting the non-duplicative nature of the indemnity claims that rebut Ms. Hopkins' contrary opinions. (Dudney Decl. ¶¶ 24-37.)

By way of contrast, Ms. Hopkins' six-page declaration concludes that because some of the same circumstances underlie both KIK's indemnity claims and plaintiffs' working capital disputes, KIK's indemnity claims improperly seek duplicative (or more) recovery. (Hopkins Decl. ¶¶ 7-25.) She further opines (improperly) that even as to indemnity claims predicated on circumstances not put at issue by plaintiffs' working capital disputes, those indemnity claims should be run through the working capital dispute process because they relate to the underlying sale price of the acquired company and the methodology applied in arriving at that price. (Hopkins Decl. ¶¶ 7, 26-30.) There is no explanation provided for Ms. Hopkins' opinions -- aside from the unsupported (and erroneous) assertion that: (1) because a working capital dispute and an indemnity claim may involve overlapping factual circumstances, the indemnity claim must be duplicative of the working capital dispute; or (2) because the conduct underlying the indemnity claim also impacts the closing working

5

capital of the acquired company, that indemnity claim must instead be asserted as a working capital dispute.

D. **The Relevance Of The Dudney Declaration To The Pending Motions.**

The Dudney declaration was filed by KIK on December 15, 2006, in support of its opposition to plaintiffs' cross-motions to, *inter alia*, stay the AAA arbitration pending in Chicago. It is plainly a rebuttal declaration to the Hopkins declaration that plaintiffs submitted in support of their cross-motion contending that the Court should enjoin the pending AAA arbitration in Chicago because KIK's indemnity claims are duplicative of the parties' working capital disputes and/or must instead be brought as working capital disputes.

III. <u>ARGUMENT</u>

A. **Mr. Dudney Is Qualified To Express His Rebuttal Opinions.**

Plaintiffs first claim, that Mr. Dudney's declaration does not pass the reliability prong of *Daubert*, is without merit. As plaintiffs point out, "the district judge must determine whether the expert is qualified in the relevant field and whether the methodology underlying the expert's conclusion is reliable." *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 816 (7th Cir. 2004)(citation omitted). Mr. Dudney is qualified in the relevant field of accounting, specifically related to purchase price disputes, working capital claims, and indemnity claims. Further, the methodology used by Mr. Dudney, analysis of all available documents applied to eighteen years of experience, is reliable.

Plaintiffs' argument that Mr. Dudney "is not qualified to assess the economic impact of the allegations in the AAA demand on KIK and the Sellers within the context of damages" (Pls.' Mot. at 4) is unwarranted. To the contrary, as summarized above, Mr. Dudney has extensive experience in matters related to post-acquisition working capital claims, indemnity claims, and similar disputes, including the computation of damages in such matters. Moreover, plaintiffs' own expert's CV and declaration reflect no relevant experience in

6

computing damages in a case like this one, and therefore plaintiffs' criticism, were it meritorious (and it is not) would require the exclusion of their own expert's conclusory declaration.

### B. Mr. Dudney's Rebuttal Opinions Are Sufficiently Supported At This Juncture.

Plaintiffs next claim that Mr. Dudney "lacks the factual background to attest to the majority of statements made in his declaration." (Pls.' Mot. at 4.) This claim is incorrect.

*First*, the opinions that Mr. Dudney is offering as to the non-duplicative nature of KIK's indemnity claims as they are pled necessarily are grounded in the pleadings available at this juncture -- prior to any fact or other discovery. It is well settled that the procedural posture of the case dictates the amount of support needed for a party's allegations. *See*, *e.g.*, *Friends of the Earth Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 198-99 (2000) ("[g]eneral allegations of injury may suffice at the pleading stage, but at summary judgment plaintiffs must set forth 'specific facts' to support their claims. And where ... the case has proceeded to judgment, those specific facts must be 'supported adequately by the evidence adduced at trial'") (citations omitted); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). That this is so is demonstrated, perhaps most immediately, by the fact that plaintiffs' purported expert relies on the allegations of KIK's arbitration demand as the basis for her opinions as well.

*Second*, Mr. Dudney did not limit himself to the allegations of KIK's arbitration demand, but he also reviewed Ms. Hopkins' declaration and the exhibits thereto (which included the so-called "KPMG memo"), as well as contemporaneous documents appended to KIK's arbitration demand. This is surely a sufficient factual predicate for his opinions at this juncture of the litigation, and if it is not, then Ms. Hopkins' declaration suffers from the same infirmity.

***Third***, the fact that Mr. Dudney was not "involved in negotiations leading to the sale of APG nor privy to the thoughts and impressions of KIK" (Pls.' Mot at 4) -- something which is equally true for Ms. Hopkins -- does not bar Mr. Dudney's expert opinions, nor prevent him from drawing reasonable factual inferences from the structure of the SPA or his experience with similar merger transactions respecting the contracting parties' intent. The Federal Rules of Evidence do not require experts to have personal knowledge of all facts supporting their opinions. *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 591 (7th Cir. 2000).

***Fourth*** and finally, the list of paragraphs to be stricken contain no statements that constitute unreliable speculation. Relying on the available documentation, Mr. Dudney drew conclusions based on statements of fact in the pleadings and the Hopkins' declaration. Paragraphs 9-12, 14, and 19 lay out the facts and assumptions used by Mr. Dudney to arrive at his conclusions, including those in paragraphs 20-23.[3] Similarly, paragraphs 24, 30, 31, 34 and 37 lay out facts taken from the available documents and used by Mr. Dudney to reach further conclusions. The Court has the opportunity to cross-examine Mr. Dudney as to the methodologies used to produce both his facts and his conclusions and can consider such when weighing the value of his declaration.

### C. Mr. Dudney's Rebuttal Opinions Are At Least As Relevant As Ms. Hopkins' Opinions.

KIK agrees that legal conclusions are the province of the Court and not to be presented in expert testimony. Further, KIK is not requesting a double standard as to the treatment of opinions that attempt to direct, rather than assist, the trier of fact. However, KIK respectfully submits that the declaration of Mr. Dudney, unlike that of Ms. Hopkins, avoids

---

[3] KIK notes that paragraphs 20-22 were not described as "unreliable" in plaintiffs' motion and that plaintiffs never assert any basis for striking paragraph 23. Indeed, plaintiffs have given no basis to strike paragraphs 1-8, 17, 18 and 23 and KIK requests that these paragraphs remain should the court decide to grant plaintiffs' motion.

improper contract interpretation and instead provides expert assistance on the indemnity and working capital claims at hand.

*First*, in so far as Mr. Dudney is offering opinions, these opinions are submitted in rebuttal to the opinions offered by Ms. Hopkins in her declaration. KIK has taken, and continues to take, the position that expert testimony as to legal conclusions improperly invades the province of the court. *See, e.g., Good Shepard Manor Foundation, Inc. v. City of Momence*, 323 F.3d 557 (7th Cir. 2003); *Hacker v. Holland*, 570 N.E.2d 951 (Ind. Ct. App. 1991). Anything contained in either declaration that is deemed to be a legal conclusion should be stricken. However, should the Court rule that Ms. Hopkins' statements regarding the resolution of claims under the SPA (*See Hopkins Decl.* ¶¶ 7, 8, 21, 24 and 26) are admissible, then KIK respectfully submits that any statements of Mr. Dudney on the same matter must be deemed admissible as well.

*Second*, plaintiffs err in labeling certain of the paragraphs of Mr. Dudney's declaration legal conclusions. For example, paragraph 10 makes no interpretation of the "legal effect of the SPA." Instead, it lays out, based on a review of the documents listed, Mr. Dudney's understanding of the agreement between KIK and the plaintiffs. Similarly, paragraphs 13-16 contain no legal conclusions. These paragraphs represent not legal conclusions, but statements on the information, belief, and expertise of Mr. Dudney as to purchase price adjustments related to EBITDA and Working Capital Shortfalls. Paragraphs 20-22 do not constitute legal conclusions. Rather, they are an explanation of the different potential consequences between EBITDA overstatements and working capital overstatements. Interpretation of the SPA is not necessary to arrive at these opinions and they are used to support the conclusions in paragraph 23, which the plaintiffs have cited as neither unreliable nor irrelevant. Finally, paragraphs 25-37 again assert the reasons that indemnity claims and working capital claims are neither duplicative in form nor in substance.

9

### IV.  CONCLUSION

For all the foregoing reasons, KIK respectfully requests that the Court deny Plaintiffs' Motion to Strike The Declaration of Louis G. Dudney (Doc. #36).

Dated: January 26, 2007                    KIK INTERNATIONAL LLC


By:   /s/ Drew G.A. Peel
      One of its attorneys


Drew G.A. Peel (N.D. Ind. Bar # 6206846)
Colby Kingsbury (N.D. Ind. Bar # 6272842)
Daniel C. Moore (N.D. Ind. Bar # 6286898)
Harry N. Niska (N.D. Ind. Bar # 6288460)
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois  60601
(312) 861-2000 (tel.)
(312) 861-2200 (fax)
dpeel@kirkland.com

*Attorneys for Defendant KIK International LLC*

## CERTIFICATE OF SERVICE

I, Drew G. A. Peel, hereby certify that a copy of *Defendant's Opposition to Plaintiffs' Motion to Strike the Declaration of Louis G. Dudney* was served upon the following attorneys of record by filing through the Northern District of Indiana's CM/ECF system on the 26th day of January 2007.

Timothy J. Abeska|
tim.abeska@btlaw.com

Robert G. Devetski
robert.devetski@btlaw.com

Brian E. Casey
brian.casey@btlaw.com

Kelly J. Hartzler
kelly.hartzler@btlaw.com

Barnes & Thornburg LLP
600 1st Source Bank Center
100 N. Michigan Street
South Bend, Indiana 46601


**KIRKLAND & ELLIS LLP**


By:   /s/ Drew G. A. Peel
      One of its attorneys